**E-FILED; Baltimore City Circuit Court**
Docket: 3/30/2026 9:30 AM; Submission: 3/25/2026 9:30 AM
**Envelope: 25780594**

Deficient per Rule 20-203(d). Unless corrected, not a valid pleading or paper

## IN THE CIRCUIT COURT BALTIMORE CITY MARYLAND

X

| | |
|---|---|
| Mary Carroll<br>714 Whitmore Avenue<br>Baltimore, Maryland 21216<br>and<br>Cornelius Carroll<br>8633 Glen Harrah Court<br>Baltimore, Maryland 21244<br>Individually and Cornelius Carroll, as the Personal<br>Representative of the Estate of Timothy Cartwell<br><br>Plaintiffs,<br><br>v.<br><br>Mayor and City Council of Baltimore,<br>c/o Baltimore City Law Department<br>(Office of the City Solicitor)<br>100 N. Holliday Street,<br>Suite 101, City Hall<br>Baltimore, MD 21202<br><br>And<br><br>PACCAR Inc., d/b/a Kenworth Trucking Company<br>10630 NE 38th Place<br>Kirkwood, WA 98033<br>Defendants. | IN THE CIRCUIT COURT<br>FOR BALTIMORE CITY<br><br>Case No.  C-24-CV-25-009193<br><br><br>AMENDED COMPLAINT<br><br><br><br>APR 2 0 2026<br><br>C...<br>Department of Law<br>100 Holliday St, City Hall<br>Baltimore, MD 21202 |

## FIRST AMENDED COMPLAINT

Plaintiffs, Mary Carroll, and Cornelius Carroll, as the personal representatives of the

Estate of Timothy Cartwell, by and through their undersigned counsel, file this Amended

Complaint against Defendants, Major and City Council of Baltimore and PACCAR Inc., doing

business as Kenworth Trucking Company, for claims related to the wrongful death of decedent,

Timothy Cartwell.

## PARTIES AND OTHER RELEVANT PERSONS

### I.   PLAINTIFFS

1.   Decedent Timothy Cartwell ("Decedent Cartwell") was struck, crushed and killed by a City of Baltimore Department of Public Works ("DPW") truck manufactured by PACCAR, Inc., doing business as Kenworth Trucking Company. and driven by Othella Capri Gough ("driver') on November 8, 2024.

2.   Decedent Cartwell was an employee of the City of Baltimore Department of Public Works and a resident of Maryland at the time of his death.

3.   Plaintiff Mary Carroll (Mrs. Carroll) is Decedent Cartwell's aunt and raised Decedent Cartwell in the family home located at 714 Whitmore Avenue, Baltimore, Maryland. She was substantially financially dependent upon and meaningfully and materially supported by Decedent Cartwell and his income was an important part of her day-to-day financial needs as defined by CJP § 3 904(b).  She is a resident of Maryland.

4.   Plaintiff Cornelius Carroll ("Mr. Carroll") is the personal representative of Decedent Cartwell's estate.  Mr. Carroll is a resident of Maryland and the estate is a legal resident of Maryland.

### II.   DEFENDANTS

7.   Defendant Mayor and City Council of Baltimore is a municipal corporation and a "local government" under the Local Government Tort Claims Act (LGTCA), Md. Cts. & Jud. Proc. ("CJP") § 5 301, responsible for Baltimore's Department of Public Works ("DPW") operations and for the acts and omissions of its employees, such as Mr. Opalla Gouch, acting within the scope of their employment.

8.   Pursuant to the Baltimore City Charter, Baltimore City Department of Public Works ("DPW") is a department/city agency of the Mayor and City Council of Baltimore and

responsible for trash pickup in Baltimore City. It owned, possessed and operated the Kenworth truck that stuck, crushed and killed Decedent Cartwell.  It also employed Opalla Capri Gouch, the driver of the Kenworth Truck, who was in the scope of his employment at the time of the incident which killed Decedent Cartwell.

9.      Defendant Major and City Council of Baltimore, on behalf of DPW, a department/city agency of the Mayor and City Council of Baltimore, under the Baltimore City Charter and ordinances, can be sued pursuant to the Maryland Tort Claims Act ("MTCA"), Baltimore City Code, the Government Claims Act ("GCA") and the Maryland Local Government Tort Claim Act ("FTCA").

10.     Defendant PACCAR, Inc., doing business as Kenworth Trucking Company ("PACCAR, Inc." or "Kenworth") manufactured, negligently designed the mirror system and cab of the truck.  It failed to provide proper warnings and instructions regarding the blind spot/lack of view along the side of the truck and difficulty of haring anyone on the side of the truck. PACCAR, Inc. knew of the above referenced defects and still placed the truck which crushed the Decedent Cartwell into the stream of commerce.  It is a resident of the State of Washington.

## JURISDICTION AND VENUE

11.     The Major and City Council of Baltimore have waived their sovereign immunity with respect to gross negligence of its agencies pursuant to the Maryland Local Government Tort Claims Act (LGTCA), Maryland Statute government code Section 12-101 through Section 12-110 and Section 5-522 (b), which states: State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or **gross negligence**, and for which the State or its units have waived

immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver. (Emphasis added).

12.     This Court has jurisdiction over plaintiffs' claim under the Maryland Local Government Tort Claims Act (LGTCA).

13.     Venue is proper in the Circuit Court of Baltimore City as all of the materials actions, events, acts and omissions occurred in Baltimore City.

14.     Venue is proper in Baltimore City, as Defendant Major and City Council of Baltimore and its agency, DPW, are located in, carry on regular Business in Baltimore City, and the cause of action arose, in Baltimore City, where Decedent Cartwell was struck and killed by the truck.

15.     Venue is proper in Baltimore City, as Defendant PACCAR, Inc,. carries on regular Business in Baltimore City, and the cause of action arose, in Baltimore City, where Decedent Cartwell was struck and killed by the truck manufactured and sold by PACCAR, Inc., and the truck was placed into the stream of commerce by PACCAR, Inc. in Baltimore, Maryland.

16.     Plaintiffs' claims against Defendants the Major and City Council of Baltimore and DPW arrives out of the tort and gross negligent of its officers, agents and employees – namely the driver of the truck that killed Decedent Cartwell and those responsible for its operational safety in connection with the performance of the duty and function of DPW.

17.     On November 11, 2024, pursuant to the FTCA and Maryland Code, Courts and judicial proceedings, §5-304, Plaintiffs provided written notice to the City Solicitor of the claim and on April 22, 2025 the City Solicitor denying the claim.

18.     On July 31, 2025, pursuant to FTCA, Plaintiffs again provided written notice to

the City Solicitor of a claim and on September 23, 2025, the City Solicitor again denied the claim.

19.    Finally, on October 2, 2025, pursuant to the FTCA, Plaintiffs requested the City Solicitor to review the denial of the claim based upon the newly released Final Case Review of Ivan Bates, of the Office of the State's Attorney for Baltimore City, charged with investigating the incident on behalf of the City of Baltimore, which found numerous irregularities, serious violations and gross negligence on the part of DPW.

20.    Alternatively, the City had actual or constructive notice, or good cause exists to excuse strict notice compliance.

21.    To the extent applicable, Plaintiffs have satisfied conditions precedent under Maryland law.

22.    Personal jurisdiction is proper in this Court over PACCAR, Inc. doing business as Kenworth as PACCAR, Inc. as PACCAR, Inc. contracted to supply trucks to DPW, derives substantial revenue from the trucks sold to DPW and one of the trucks manufactured by PACCAR caused Decedent Cartwell's tortious injuries in the State of Maryland.  PACCAR contracted to supply and derives substantial revenue from the sales of trucks to the City of Baltimore and DPW and placing those trucks into the stream of commerce in the City of Baltimore.  *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102 and/or § 6-1-3(b)(4).

23.    Plaintiffs have conducted a good faith and reasonably diligent effort to identify, locate and name as use plaintiffs all individuals who might qualify as use plaintiffs.

24.    Venue is proper as all defendants are either political subdivisions located in Baltimore, Maryland, carry on regular business in or with Baltimore, Maryland, or contracted to have vehicles used in Baltimore, Maryland, all acts which lead up to the action occurred in

Baltimore, Maryland and the action arose in Baltimore, Maryland.

## FACTS – THE INCIDENT

25.     On November 8, 2024, at approximately 10:20 a.m., the DPW driver's failure to visualize the area on the right side of the truck, causing Decedent Cartwell's death.

26.     All decisions regarding the purchase, maintenance and operation of the 2021 Kenworth Model KB70 truck ("truck") were performed by Defendant the Major and City Council of Baltimore and/or its agency, DPW's, officers, agents, and employees in connection with the performance, duties and functions of the DPW, acting at all times within the scope of their agency, service, or employment.

27.     This includes DPW's practice of allowing drivers to turn the side view mirror system on the trucks towards the cab while in narrow alleys preventing the driver from seeing the sides of the vehicle contrary to federal regulations, to include but not limited to:

> a.     Federal Motor Vehicle Safety Standard (FMVSS) No. 111 (49 CFR 571.111 (NHTSA)) requiring functional sideview mirrors on commercial trucks which provide a clear view to the rear to reduce accidents; and,
>
> b.     49 CFR §393.80 (FMCSA) which requires commercial trucks to have a mirror on each side to provide a view of the road to the rear and the area along both sides.

28.     The practice of turning the mirrors system towards the cab of the truck prevented the use of the sideview mirror system and prevented its purpose of allowing the driver to see the sides of the truck and reduce the potential for accidents.

29.     The truck at issue was a 2021 Kenworth model K270/K370 ("Kenworth"), with the standard chassis configuration, manufactured, sold, and/or put into the stream of commerce by PACCAR, Inc.

30.     The Kenworth is essentially a do it all urban vehicle and due to its size, the

Kenworth has what is known as a "cab over" design.

31.    The cab over vehicles design can make it harder for a driver to hear what is going on around the vehicle.

32.    The Kenworth truck involved in this incident had the following dimensions: length 334 inches; width 95 inches; and height 127 inches.

33.    The measured distance between the bottom of the passenger side mirror and the ground was found to be 73 inches.

34.    The alley at 1800 block Baker Street where the incident occurred runs north to south and is extremely narrow.

35.    The alley measures between 9.42 feet and 10.17 feet wide in different sections.

36.    There are two telephone poles in the area of the incident that run along the southwest side of the alley, Pole Nos. 113142 & 113143.

37.    The measurement from the east side of the alley (odd side) to the concrete base of the west side of the alley is 9.95 feet.

38.    The measurement from the east side of the alley to the outer portion of Pole No.: 113142, the pole that at issue in this case, is 8.75 feet.

39.    This left just 1.2 feet of space for the 7.9 foot garbage truck to pass through.

40.    When centered, the truck would have just 7.2 inches of clearance on each side of the alley.

41.    In alley ways such as this, it is DPW's practices and procedure to allow the drivers to turn their side mirror systems toward the truck's cab so as not to strike fences and other objects that run adjacent to alleys.

42.    As a result the driver cannot and did not visualize the alley on the side of the

truck.

43. The truck pinned Decedent Cartwell against a utility pole.

44. On November 8, 2024, the Fire Department responded to the location of the incident to find Mr. Cartwell, conscious, in great pain, and suffering from pelvic fractures and life-threatening injuries.

45. The initial call was upgraded to a vehicle vs. pedestrian incident and the Crash Team was eventually notified.

46. Decedent Cartwell was taken to the University of Maryland Medical Center for emergency surgery and died nearly nine hours later of hemorrhagic shock and his crush injuries at 7:05 pm.

47. Decedent Cartwell exercised due care for his own safety at all relevant times.

### FACTS – THE IMMEDIATE AFTERMATH

48. Unfortunately, the scene was not preserved by DPW or any police agency.

49. It is believed and averred that the trash truck was traveling down the alley while Mr. Epps and Decedent Cartwell, both DPW workers, were retrieving trash bins and loading the trash into the rear compactor.

50. As the garbage truck continued southbound, its operator, Mr. Gough, the driver, honked the horn to alert two pedestrians at the end of the alley near Baker Street to remove trash bins from its path.

51. While the truck was passing an adjacent alley, Decedent Cartwell, as he was trained to do by DPW and in conformity with DPW's practices and procedures walked toward Pole No. 113142 to collect trash.

52. Immediately, after the truck moved forward, Mr. Cartwell collapses between the

-8-

truck and the fence.

53. After Mr. Cartwell collapses, Mr. Epps, requested the driver to "go forward."

54. Mr. Gough and Mr. Epps then approached Mr. Cartwell, and Mr. Gough called 911.

55. Shortly after the incident, Mr. Anderson, a DPW supervisor, appeared on scene in a white DPW pick-up truck.

56. Against DPW policy, Mr. Anderson allowed the driver, Mr. Gough, to leave the scene in a Lyft.

57. This was a significant error, and gross negligence, as it impeded the investigation of the accident, as law enforcement could have mandated that Mr. Gough, the driver, provide a blood sample using a Maryland State Police blood kit to determine if he was impaired.

58. DPW has draft operating procedures that indicate when a truck enters an alley or tight space, workers are to walk behind the truck within view of the side mirror systems. However, the actual practice is for the driver to turn the mirror systems into the cab and drive the truck blind down the alley without seeing the sideview of the truck.

59. The DPW practice of allowing drivers to turn mirror systems inwards towards the cab and drive the truck blindly down the alley without being able to fully visualize the sides of the truck when it knew that by doing so the truck could cause a danger to its workers or pedestrians is gross negligence.

60. Decedent Cartwell was never trained on the dangers of this practice and DPW had not provided standard operating procedure training and certification.

61. Mr. Gough, the driver of any vehicle has three (3) primary tasks: (1) guide the vehicle-that is, follow the path of the road and stay within lane boundaries; (2) maintain

appropriate spacing with other vehicles; and (3) avoid obstacles.

62. It is well accepted in the field of driver perception and response that most of a driver's attention is given over to the guidance task of guiding the garbage truck through the narrow alley in which he had just inches of clearance on each side.

## COUNT I
### 42 U.S.C. § 1983/VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14th AMENDMENT BY THE MAYOR AND CITY COUNCIL OF BALTIMORE

63. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

64. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall … deny to any person within its jurisdiction the equal protections of the laws." U.S. Const., amend. XIV, § 1.

65. Defendant Mayor and City Council of Baltimore are subject to the Equal Protection Clause of the Fourteenth Amendment.

66. At all times relevant hereto, Defendant the Mayor and City Council of Baltimore acted under color of law, to wit, under color of the statutes, ordinances, regulations, customs and usages of the City of Baltimore, Maryland. Defendant Mayor and City Council of Baltimore engaged in the conduct as alleged herein to the injury of Decedent Cartwell and deprived Decedent Cartwell of the rights, privileges, and immunities secured to Decedent Cartwell by the Fourteenth Amendment to the Constitution of the United States and the laws of the United States.

67. Defendant the Mayor and City Council of Baltimore acted in a grossly negligent manner in establishing and maintaining practices and procedures of inadequate training, supervision an operational practices of allowing trucks in alleys to turn the mirror systems

-10-

inwards towards the cab and prevent a view to the side and rear of the vehicle by the driver and contrary to the federal regulations which were designed to protect Decedent Cartwell from injury and death.

68.     The deliberate indifference to the danger posed to persons such as Decedent Cartwell in failing to enact adequate measures designed so as to prevent the drivers driving blind deprived Decedent Cartwell of his constitutional rights and directly and proximately lead to his serious injuries, death and damages.

69.     Defendant the Mayor and City Council of Baltimore participated in, condoned, or was deliberately indifferent to the safety of its employees/sanitation workers, a significant number of whom are African-American, by failing to properly maintain the mirrors on their trucks and have the mirrors open so that the drivers of the trucks would have a view of the side of the trucks while proceeding down the alley.

70.     The harm caused to Decedent Cartwell was the result of the gross negligence of Defendant the Mayor and City Council of Baltimore, its agents, servants, and/or employees who knowingly implementing or executing the policies, practices, customs, or regulations officially adopted and promulgated by DPW and Mayor and City Council of Baltimore for allowing drivers to turn their mirror systems inward and drive with blind spots to the sides of the vehicle.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court, pursuant to 42 U.S.C. § 1983:

a.    Enter judgment against Defendant Mayor and City Council of Baltimore for actual, compensatory, economic, non-economic, wrongful death, survival, punitive, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b.    Enter judgment against Defendant Baltimore City Department of Public Works for such attorney's fees and costs as may be or become appropriate; and

-11-

c.    Grant any other such relief as this Court may determine is just and proper.

## COUNT II

## VIOLATION OF NATIONAL HIGHWAY TRANSPORTATION SAFETY ADMINISTRATION STANDARD (NHTSA) § 571.111 Standard No. 111; Rear visibility. 49 CFR §571.111 (NHTSA) BY THE THE MAYOR AND CITY COUNCIL OF BALTIMORE

71.    This Count incorporates by reference the foregoing and following paragraphs and

averments of this Complaint as if set forth fully herein.

72.    The (NHTSA) § 571.111 Standard No. 111; Rear visibility. 49 CFR §571.111

(NHTSA) states as follows:

**§ 571.111 Standard No. 111; Rear visibility. 49 CFR §571.111 (NHTSA)**

S1. Scope. **This standard specifies requirements for rear visibility devices and systems.**

S2. Purpose. **The purpose of this standard is to reduce the number of deaths and injuries that occur when the driver of a motor vehicle does not have a clear and reasonably unobstructed view to the rear.**

S3. Application. **This standard applies to passenger cars, multipurpose passenger vehicles, trucks, buses, school buses, motorcycles and low-speed vehicles.**

S7. Requirements for multipurpose passenger vehicles and trucks with a GVWR of more than 4,536 kg and less than 11,340 kg and buses, other than school buses, with a GVWR of more than 4,536 kg.

S7.1 Each multipurpose passenger vehicle and truck with a GVWR of more than 4,536 kg and less than 11,340 kg and each bus, other than a school bus, with a GVWR of more than 4,536 kg shall have outside mirrors of unit magnification, each with not less than 323 cm2 of reflective surface, installed with stable supports on both sides of the vehicle. The mirrors shall be located so as to provide the driver a view to the rear along both sides of the vehicle and shall be adjustable both in the horizontal and vertical directions to view the rearward scene.

S8. Requirements for multipurpose passenger vehicles and trucks with a GVWR of 11,340 kg or more.

S8.1 Each multipurpose passenger vehicle and truck with a GVWR of 11,340 kg or more shall have outside mirrors of unit magnification, each with not less than 323 cm2 of reflective surface, installed with stable supports on both sides of the vehicle. **The mirrors shall be located so as to provide the driver a view to the rear along both sides of the vehicle and shall be adjustable both in the horizontal and vertical directions to view the rearward scene.**

73.    DPW was aware of the blind spot on the sides of the truck caused by turning the mirror system inward towards the cab of the truck.

74.    DPW was aware of the dangers posed by trucks to workers with mirror systems turned into the cab during trash pickup in the tight spaces of Baltimore City alleys.

75.    It was foreseeable that a DPW worker might get trapped on the side of the truck.

76.    Defendant Mayor and City Council of Baltimore through its agency DPW owed decedent Cartwell a duty to exercise due care to avoid striking him.

77.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to exercise the highest degree of care with respect to the training of the driver and Descendent Cartwell to prevent foreseeable accidents.

78.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to exercise the highest degree of care with respect to Decedent Cartwell by providing a safe means and method for his employment.

79.    Defendant Mayor and City Council of Baltimore through its agency DPW grossly breached these duties by having the mirror systems of the truck turned into the cab which created blind spots along the sides of the truck and prevented the driver from seeing along the side of the truck.

80.    Defendant Mayor and City Council of Baltimore through its agency DPW could have equipped the truck with a smaller mirror system or a mirror system in a different position to allow the mirrors to remain extended and allow the driver to see down the sides of the truck.

81.    Alternatively, Defendant DPW could have equipped the truck with cameras to allow the driver to see down the sides of the truck.

82.    Sideview and surround-view systems were available as early as 2008 and readily

-13-

available by 2019.

83.     Additionally, Defendant Mayor and City Council of Baltimore through its agency DPW could have had the trash cans placed on the street and not in the alley to prevent the truck from having to be maneuvered down the dangerously cramped alley.

84.     The cost to changeout the mirror system or certain of its parts for a smaller mirror system or reposition the mirror system or install cameras or requiring the trash cans not to be placed in the dangerously small alley but on the larger streets would be minimal cost at best or nothing at all; would allow the driver view down the side of the truck because the mirror systems would not have been turned inwards towards the cab and causing a blind spot on the side of the vehicle and would have prevented this foreseeable accident.

85.     DPW's employee, Mr. Gough, in connection with the performance of the duties and functions of DPW, grossly breached these duties by failing to check the sides of the truck before continuing down the alley.

86.     DPW's employee, Mr. Gough, in connection with the performance of the duties and functions of DPW, grossly breached these duties by failing to ensure that no one was on the side of the truck prior to proceeding down the dangerously narrow alley.

87.     Defendant Mayor and City Council of Baltimore through its agency DPW, acting directly and by and through its officers, agents, servants, and employees, and in connection with the performance of the duties and functions of DPW grossly breached these duties by allowing this driver, and other drivers, to turn the mirror system in towards the cab, causing a blind spot along the side of the truck that the driver could not clear and allowing the driver to drive down the dangerously narrow alley without the ability to visualize the area on the sides of the truck.

88.     Defendant Mayor and City Council of Baltimore through its agency DPW, acting

directly and by and through its officers, agents, servants, and employees, and in connection with

the performance of the duties and functions of DPW, further grossly breached its duties to

Decedent Cartwell in the following ways:

a.  Failing to properly hire, train, supervise, and direct its agents, officers, servants, and employees, including but not limited to the driver;

b.  Failing to properly hire, train, supervise, and direct its agents, officers, servants, and employees, including but not limited to the Supervisor Anderson, who allowed the driver to leave the scene prior to the accident being investigated and failing to otherwise preserve the scene of the accident;

c.  Failing to properly hire, train, supervise instruct, and control its employees, agents, officers, and servants, including but not limited to the driver, to ensure the care exhibited towards DPW's employees met the applicable standards of care owed to Decedent Cartwell;

d.  Failing to properly hire, train, supervise, instruct, and control its employees, agents, officers, and servants, including but not limited to the driver, to ensure the care exercised concerning employees met the applicable standards of care;

e.  Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants owed towards Decedent Cartwell;

f.  Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants owed towards Decedent Cartwell;

g.  Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants to prevent picking up trash in narrow alleys;

h.  Failing to purchase trucks with smaller mirror system or reposition the mirror system to have a view of the sides of the truck;

i.  Failing to purchase truck with side view cameras to have a view of the sides of the truck;

j.  Failing to retrofit the truck with smaller mirror system or reposition the mirror system to have a view of the sides of the truck

k. Failing to retrofit the truck with a side view cameras to have a view of the sides of the truck;

l. Failing to properly balance the costs and benefits of smaller side-view mirror system or repositioning the mirror system which would not need to be turned in to navigate the alley and would allow a sideview;

m. Failing to properly balance the costs and benefits of cameras which would allow a sideview;

n. Failing to properly balance the costs and benefits of not allowing the trash trucks to pick up trash in small alleys;

o. Failed to properly preserve the evidence from the driver and at the scene to include allowing the driver to leave without being properly interviewed and testing and by not preserving the accident scene and removing the truck prior to any investigation;

p. Other tortious acts and omissions as have been detailed in this Amended Complaint; and

q. Other tortious acts and omissions that may become apparent during the course of discovery.

89. Defendant Mayor and City Council of Baltimore through its agency DPW, acting directly and by and through its officers, agents, servants, and employees, including the driver, proximately caused Decedent Cartwell to suffer physical pain and mental anguish for nearly 10 hours before being pronounced dead.

90. Each of the aforementioned grossly negligent acts and omissions by Defendant DPW, acting directly and by and through its officers, agents, servants, and employees, including the driver, proximately caused Decedent Cartwell's pre-impact fright.

91. Decedent Cartwell acted at all relevant times with reasonable care for his own safety.

92. Defendant DPW was aware of the aforementioned grossly negligent defective and unreasonably dangerous condition and practice of its truck fleet, yet chose not to take any

reasonable steps to ameliorate that condition.

93. The failure to take such reasonable steps was grossly negligent and in wanton and willful disregard of the safety of DPW's employees, including Decedent Cartwell.

94. Had Defendant Mayor and City Council of Baltimore through its agency DPW acted with reasonable care, Decedent Cartwell would not have been injured and killed.

95. DPW's driver had the last clear chance to avoid striking Decedent Cartwell.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court, pursuant to (NHTSA) § 571.111:

    a. Enter judgment against Defendant Mayor and City Council of Baltimore for actual, compensatory, economic, non-economic, wrongful death, survival, punitive, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b. Enter judgment against Defendant Baltimore City Department of Public Works for such attorney's fees and costs as may be or become appropriate; and

    c. Grant any other such relief as this Court may determine is just and proper.

## COUNT III

## VIOLATION OF FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION REGULATION 49 CFR §393.80 (FMCSA) BY THE MAYOR AND CITY COUNCIL OF BALTIMORE

96. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

97. The Federal Motor Carrier Safety Administration (FMCSA) 49 CFR §393.80 states as follows:

**49 CFR §393.80 (FMCSA)**

§ 393.80 Rear-vision mirrors.

(a) **Every bus, truck, and truck tractor shall be equipped with two rear-vision mirrors, one at each side, firmly attached to the outside of the motor vehicle, and so located as to reflect to the driver a view of the highway to the rear, along both sides of the vehicle.** All such regulated rear-vision mirrors and their replacements shall meet, as a minimum, the requirements of FMVSS No. 111 (49 CFR 571.111) in force at the time the vehicle was manufactured.

(b) Exceptions.

(1) Mirrors installed on a vehicle manufactured prior to January 1, 1981, may be continued in service, provided that if the mirrors are replaced they shall be replaced with mirrors meeting, as a minimum, the requirements of FMVSS No. 111 (49 CFR 571.111) in force at the time the vehicle was manufactured.

(2) Only one outside mirror shall be required, which shall be on the driver's side, on trucks which are so constructed that the driver has a view to the rear by means of an interior mirror.

(3) In driveway-towaway operations, the driven vehicle shall have at least one mirror furnishing a clear view to the rear.

[48 FR 57139, Dec. 28, 1983, as amended at 66 FR 49874, Oct. 1, 2001]

98.     Defendant Mayor and City Council of Baltimore through its agency DPW was aware of the blind spot on the sides of the truck caused by turning the mirror system inward towards the cab of the truck.

99.     Defendant Mayor and City Council of Baltimore through its agency DPW was aware of the dangers posed to workers by trucks with mirror systems turned into the cab during trash pickup in the tight spaces of Baltimore City alleys.

100.    It was foreseeable that a DPW worker might get trapped on the side of the truck.

101.    Defendant Mayor and City Council of Baltimore through its agency DPW owed decedent Cartwell a duty to exercise due care to avoid striking him and to promulgate practices and procedures to prevent accidents lake the accident that killed Decedent Cartwell.

102.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to exercise the highest degree of care with respect to the training of the driver and Descendent Cartwell to prevent foreseeable accidents.

103.    Defendant Mayor and City Council of Baltimore through its agency DPW had a

duty to exercise the highest degree of care with respect to Decedent Cartwell by providing a safe means and method for his employment.

104.    Defendant Mayor and City Council of Baltimore through its agency DPW grossly breached these duties by having the mirror systems of the truck turned into the cab which prevented the driver from seeing along the side of the truck.

105.    Defendant Mayor and City Council of Baltimore through its agency DPW could have equipped the truck with a smaller mirror system or repositioned the mirror system to allow the mirrors to remain extended and allow the driver to see down the sides of the truck.

106.    Alternatively, Defendant Mayor and City Council of Baltimore through its agency DPW could have equipped the truck with cameras to allow the driver to see down the sides of the truck.

107.    Sideview and surround-view systems were available as early as 2008 and readily available by 2019.

108.    Additionally, Defendant Mayor and City Council of Baltimore through its agency DPW could have had the trash cans placed on the street and not in the alley to prevent the truck having to be maneuvered dangerously down the cramped alley.

109.    The cost to changeout the mirror systems for smaller mirrors or reposition the mirrors or install cameras or requiring the trash cans not to be placed in the alley but on the larger streets would be minimal cost at best or nothing at all; would allow the driver view down the side of the truck and would have prevented this foreseeable accident.

110.    DPW's employee, Mr. Gough, in connection with the performance of the duties and functions of DPW, grossly breached these duties by failing to check the sides of the truck before continuing down the alley.

111.   DPW's employee, Mr. Gough, in connection with the performance of the duties and functions of DPW, grossly breached these duties by failing to ensure that no one was on the side of the truck.

112.   DPW, acting directly and by and through its officers, agents, servants, and employees, and in connection with the performance of the duties and functions of DPW, further grossly breached its duties to Decedent Cartwell in the following ways:

 a. Failing to properly hire, train, supervise, and direct its agents, officers, servants, and employees, including but not limited to the driver;

 b. Failing to properly hire, train, supervise, and direct its agents, officers, servants, and employees, including but not limited to the Supervisor Anderson, who allowed the driver to leave the scene prior to the accident being investigated and failing to otherwise preserve the scene of the accident;

 c. Failing to properly hire, train, supervise instruct, and control its employees, agents, officers, and servants, including but not limited to the driver, to ensure the care exhibited towards Defendant DPW's employees met the applicable standards of care owed to Decedent Cartwell;

 d. Failing to properly hire, train, supervise, instruct, and control its employees, agents, officers, and servants, including but not limited to the driver, to ensure the care exercised concerning employees met the applicable standards of care;

 e. Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants owed towards Decedent Cartwell;

 f. Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants owed towards Decedent Cartwell;

 g. Failing to promulgate policies consistent with the duty of care DPW and its employees, officers, agents, and servants to prevent picking up trash in narrow alleys;

 h. Failing to purchase trucks with a smaller mirror system or a mirror system located in a different position to have a view of the sides of

the truck;

i.   Failing to purchase truck with side view cameras to have a view of the sides of the truck;

j.   Failing to retrofit the truck with a smaller mirror system or reposition the mirror system to have a view of the sides of the truck

k.   Failing to retrofit the truck with side view cameras to have a view of the sides of the truck;

l.   Failing to properly balance the costs and benefits of smaller side-view mirrors which would not need to be turned in to navigate the alley and would allow a sideview;

m.   Failing to properly balance the costs and benefits of cameras which would allow a sideview;

n.   Failing to properly balance the costs and benefits of not allowing the trash trucks to pick up trash in small alleys;

o.   Failed to properly preserve the evidence from the driver and at the scene to include allowing the driver to leave without being properly interviewed and testing and by not preserving the accident scene and removing the truck prior to any investigation;

p.   Other tortious acts and omissions as have been detailed in this Complaint; and

q.   Other tortious acts and omissions that may become apparent during the course of discovery.

113.   Defendant Mayor and City Council of Baltimore through its agency DPW, acting directly and by and through its officers, agents, servants, and employees, including the driver, proximately caused Decedent Cartwell to suffer physical pain and mental anguish for nearly 10 hours before being pronounced dead.

114.   Each of the aforementioned grossly negligent acts and omissions by Defendant Defendant Mayor and City Council of Baltimore through its agency DPW, acting directly and by and through its officers, agents, servants, and employees, including the driver, proximately caused Decedent Cartwell's pre-impact fright.

-21-

115. Decedent Cartwell acted at all relevant times with reasonable care for his own safety.

116. Defendant Defendant Mayor and City Council of Baltimore through its agency DPW was aware of the aforementioned grossly negligent defective and unreasonably dangerous condition of its truck fleet, yet chose not to take any reasonable steps to ameliorate that condition.

117. The failure to take such reasonable steps was grossly negligent and in wanton and willful disregard of the safety of Defendant DPW's employees, including Decedent Cartwell.

118. Had Defendant Defendant Mayor and City Council of Baltimore through its agency DPW acted with reasonable care, Decedent Cartwell would not have been injured and killed.

119. DPW's driver had the last clear chance to avoid striking Decedent Cartwell.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court, pursuant to (FMCSA) 49 CFR §393.80:

    a. Enter judgment against Defendant Mayor and City Council of Baltimore for actual, compensatory, economic, non-economic, wrongful death, survival, punitive, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b. Enter judgment against Defendant Baltimore City Department of Public Works for such attorney's fees and costs as may be or become appropriate; and

    c. Grant any other such relief as this Court may determine is just and proper.

## COUNT IV

### GROSS NEGLIGENCE AGAINST THE MAYOR AND CITY COUNCIL OF BALTIMORE

120. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein

121.    Gross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences—a wanton or reckless disregard for human life or the rights of others, evincing an utter indifference to the safety of others.

122.    Without limitation, Defendant Mayor and City Council of Baltimore through its agency DPW supervisors/managers—engaged in grossly negligent conduct by:

    a.    Knowingly sending workers into dangerously small alley ways with oversized trucks with mirrors turned into the cab which prevented the driver from seeing the area along the side of the truck despite obvious, imminent danger and prior warnings/near misses and with wonton and reckless disregard for the life and other rights of its workers, such as Decedent Cartwell, and endangering DPW workers and pedestrians;

    b.    Knowingly allowing the driver of the truck to turn his mirror system inward towards the cab and creating known blind spots along the side of the vehicle endangering DPW workers and pedestrians in a wonton and reckless manner;

    c.    Ignoring mandatory industry and City safety procedures and failing to provide required safety devises and warnings upon the trucks;

    d.    Commanding the work to continue after other near accidents, in conscious disregard of a high probability of death/serious injury; and

    e.    Failing to train/supervise personnel and to correct known systemic hazards, reflecting a pattern of reckless indifference to worker safety.

    f.    These acts and omissions, taken together, surpass ordinary negligence and constitute gross negligence under Maryland law.

123.    Defendant Mayor and City Council of Baltimore through its agency DPW's gross negligence was a direct and proximate cause of Decedent Cartwell's injuries and death.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court, pursuant to (FMCSA) 49 CFR §393.80:

    a.    Enter judgment against Defendant Mayor and City Council of Baltimore for actual, compensatory, economic, non-economic, wrongful death, survival, punitive, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b.      Enter judgment against Defendant Baltimore City Department of Public Works for such attorney's fees and costs as may be or become appropriate; and

c.      Grant any other such relief as this Court may determine is just and proper.

## COUNT V

## STRICT LIABILITY CLAIM AGAINST DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY – DESIGN DEFECT WITH RESPECT TO INADEQUATE MIRROR SYSTEM, LACK OF SIDE VIEW AND SURROUND-VIEW (CAMERA) SYSTEM AND DEFECTIVE DESIGN OF CAB (INDIVIDUALLY AND IN COMBINATION WITH EACH OTHER)

124.    This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

125.    Defendant PACCAR, Inc., doing business as Kenworth Trucking Company ("Kenworth") designed and sold the 2021 Kenworth Model KB70 truck ("truck") that crushed Decedent Cartwell.

126.    DPW purchased the the Kenworth truck from PACCAR, Inc.

127.    The truck was placed into the stream of commerce and sold by PACCAR, Inc. in a defective and unreasonably dangerous condition, in that the design and positioning of the truck mirror system did not permit adequate visualization of the alley along the truck's side because the truck failed to incorporate a smaller side-view mirrors system or reposition the current mirror system which would have allowed the truck to proceed down the alley without the driver turning the mirrors to the inside rendering the mirrors useless and creating blind spots along the sides of the truck.

128.    The truck was placed into the stream of commerce and sold by PACCAR, Inc in a defective and unreasonably dangerous condition, in that the design of the truck did not permit adequate visualization of the alley along the truck's side because the truck failed to incorporate

side view and surround-view (cameras) systems which were available as early as 2008 and standard on many vehicles by 2018/2019.

129.    Such a sideview mirror system would have a minimal cost per truck if included in the design and manufacture of the truck.

130.    Such a camera would have a minimal cost per truck if included in the design and manufacture of the truck.

131.    The truck reached DPW without any substantial change in its condition and was in that same condition at the time it struck and killed Decedent Cartwell.

132.    On November 8, 2024, while DPW was using the truck in a foreseeable manner, Decedent Cartwell was pinned and crushed by the truck.

133.    PACCAR, Inc. was aware of the above referenced defects in the truck and willfully, wantonly and intentionally sold the truck in its defective condition even though it know the truck would be used in narrow alleys and would be a potential danger to pedestrians and workers.

134.    Owing to the lack of an appropriately functional sideview mirror system, the truck struck, crushed and killed Decedent Cartwell.

135.    Alternatively, owing to the lack of sideview cameras, the truck, crushed and killed Decedent Cartwell.

136.    Additionally, owing to the "cab over" design of the truck, which makes it harder for a driver to hear what is going on around the truck and the failure to design the cab to allow the driver to hear those working immediately on the side of the truck, the truck struck, crushed and killed Decedent Cartwell.

137.    The utility, if any, in failing to include a smaller mirror system, and/or an

appropriately positioned mirror system for the truck's purpose and/or functional sideview mirror systems that did not have to be turned in when proceeding down narrow alleys was outweighed by the risk to the public and employees of not including the mirror.

138.    Additionally, the utility, if any, in failing to include a sideview camera was outweighed by the risk to the public and employees of not including the camera.

139.    The Kenworth truck was defective and unreasonably dangerous when it left Defendant PACCAR, Inc.'s control.

140.    The defects existed at the time of manufacture and sale. And directly caused Decedent Cartwell's injuries.

141.    A reasonable person and DPW employee, seeing the cab design and mirror system design on the Kenworth truck, and knowing that employees/workers routinely cross in front and on the side of the truck to collect trash, would reasonably have contemplated that the driver of the Kenworth truck could visualize the alley directly on the side of the truck and hear a fellow employee on the side of the truck.

142.    Contrary to those reasonable beliefs, the defective design did not allow the truck driver to adequately visualize the side of the truck and/or hear a co-worker on the side of the truck.

143.    The defective designs put the truck in an unreasonable dangerous condition to workers on the side of the truck in an alley.

144.    As a result of the defective conditions (i.e., the lack of a smaller or repositioned sideview mirror system, the lack of cameras and the cab over design), individually and collectively, and each of the foregoing tortious acts and omissions of PACCAR Inc., Decedent Cartwell suffered extreme pain and agony lasting from the time the Kenworth truck crushed him

-26-

until his death hours later.

145.    As a result of this defective conditions and each of the foregoing tortious acts and omissions of PACCAR, Inc., Decedent Cartwell suffered pre-impact fright and is entitled to damages including medical cost, lost wages, pain and suffering and property damage.

146.    Decedent Cartwell acted at all relevant times with reasonable care for his own safety.

147.    Defendant PACCAR, Inc. was aware of the unreasonably dangerous condition in which its truck entered into the stream of commerce, yet decided to do nothing to mitigate this risk.

148.    Had Defendant PACCAR, Inc. acted reasonably, and not performed the foregoing acts and omissions, Decedent Cartwell would not have been injured or killed by the truck.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

   a.    Enter judgment against Defendant PACCAR, Inc. for actual, compensatory, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

   b.    Enter judgment against Defendant PACCAR, Inc. for such attorney's fees and costs as may be or become appropriate; and

   c.    Grant any other such relief as this Court may determine is just and proper.

## COUNT VI

### NEGLIGENCE CLAIM AGAINST DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY – NEGLIGENT DESIGN DEFECT WITH RESPECT TO INADEQUATE MIRROR SYSTEM, LACK OF SIDE VIEW AND SURROUND-VIEW (CAMERA) SYSTEM AND DEFECTIVE DESIGN OF CAB (INDIVIDUALLY AND IN COMBINATION WITH EACH OTHER)

149.    This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

150.    Defendant PACCAR, Inc., doing business as Kenworth Trucking Company

("Kenworth") designed and sold the 2021 Kenworth Model KB70 truck ("truck") that crushed Decedent Cartwell.

151.    DPW purchased the the Kenworth truck from PACCAR, Inc.

152.    Defendant PACCAR, Inc. owed a duty to Decedent Cartwell to design, manufacture, test, and distribute a reasonably safe truck.

153.    Defendant PACCAR, Inc.'s breached that duty by failing to exercise reasonable care in preventing the defect(s) in the truck, its cab and its mirror systems.

154.    Such a failure to act was negligent, grossly negligent, and in wanton and willful disregard of the safety of pedestrians and sanitation works who would reasonably be harmed by the defective and unreasonably dangerous condition of the truck.

155.    Thus, Defendant PACCAR, Inc. owed Decedent Cartwell a duty to minimize his risk of being struck by the truck in small, narrow alleys.

156.    Defendant PACCAR, Inc. breached these duties to Decedent Cartwell by choosing to omit a smaller sideview mirror system or repositioning the current mirror system or adding cameras, and by not designing the cab so that the driver could hear those on the side of the truck.

157.    The harm caused to Decedent Cartwell was foreseeable and proximate result of Defendant PACCAR Inc.'s decision to omit the smaller mirror system or reposition the current mirror system or add cameras or an audibly functional cab design.

158.    Defendant PACCAR was further aware that Defendant DPW intended to use the truck, a do it all urban vehicle, as a trash truck in narrow alleys.

159.    Defendant Kenworth was aware that Defendant DPW wanted a truck that would make pedestrian and workers on the side of trucks in alleys as safe as possible.

160. Decedent Cartwell was injured as a result of the failure of Defendant PACCAR, Inc. to design the truck to prevent know dangers and hazards.

161. Decedent Cartwell acted at all relevant times with reasonable care for his own safety.

162. Defendant PACCAR, Inc. was aware of the unreasonably dangerous condition in which its truck entered into the stream of commerce, yet decided to do nothing to mitigate this risk.

163. Had Defendant PACCAR, Inc. acted reasonably, and not performed the foregoing acts and omissions, Decedent Cartwell would not have been injured or killed by the truck.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

    a.    Enter judgment against Defendant PACCAR, Inc. for actual, compensatory, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b.    Enter judgment against Defendant PACCAR, Inc. for such attorney's fees and costs as may be or become appropriate; and

    c.    Grant any other such relief as this Court may determine is just and proper.

## COUNT VII
### STRICT LIABILITY CLAIM AGAINST DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY – FAILURE TO PROVIDE ADEQUATE WARNING OF BLIND SPOTS

164. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

165. Defendant PACCAR Inc., doing business as Kenworth Trucking Company ("Kenworth") designed and sold the 2021 Kenworth Model KB70 truck ("truck") that crushed Decedent Cartwell.

166. Defendant PACCAR, Inc. was at all relevant times a manufacturer and/or seller of

the Product, responsible for its design, manufacture, labeling, packaging, distribution, and sale to consumers. As such, manufacturers and sellers are responsible for ensuring products enter the marketplace with adequate warnings and instructions.

167. A product is defective if it lacks adequate warnings or instructions regarding dangers that are known or should be known to the manufacturer.

168. A failure to warn constitutes a product defect, and such claims are evaluated under principles of strict liability.

169. Defendant PACCAR, Inc. failed to provide adequate warnings regarding the risks associated with foreseeable use of the trucks mirror system, including but not limited to foreseeable misuse.

170. The absence of proper warnings rendered the trucks mirror system unreasonably dangerous when it left Defendant's control.

171. Defendant PACCAR, Inc. knew or, through reasonable testing and evaluation, should have known of the hazards associated with use of the mirror system being turned into the cab in dangerously close alleys.

172. Despite this knowledge, Defendant PACCAR, Inc. failed to issue sufficient warnings, labels, instructions, or safety information to alert users to these dangers.

173. Even if Defendant PACCAR, Inc. could not have rendered the truck safer through design changes, Defendant PACCAR, Inc. failed to warn both Decedent Cartwell and the purchaser or driver of the blind spot encompassing the side of the truck when the mirror system is turned into the cab.

174. Additionally, even if Defendant PACCAR, Inc. could not have rendered the truck safer through design changes, Defendant PACCAR, Inc. failed to warn both Decedent Cartwell

and the purchaser or driver of the driver's inability to hear someone on the side of the truck if they yelled to the driver because of the cab over design of the truck.

175.    Warnings should have been affixed to the outside of the truck, warning pedestrians and workers of the blind spot on the sides of the truck, and warning them not to be on the side of the truck in a confined area.

176.    Warnings should have been affixed to the outside of the truck, warning pedestrians and workers of the lack of the driver's ability to hear someone on the side of the truck.

177.    The blind spot on the side of the truck and cab design were not obvious to a pedestrian or worker attempting to pass on the side of the truck.

178.    But for warnings affixed to the truck, Decedent Cartwell would not have been injured.

179.    A pedestrian or worker being struck by a truck is a foreseeable occurrence which should have been anticipated.

180.    Decedent Cartwell, a DPW worker, was in the foreseeable zone of danger.

181.    Thus, Defendant PACCAR, Inc. owed Decedent Cartwell a duty to minimize his risk of being crushed by the truck.

182.    Decedent Cartwell used the truck in an intended and reasonably foreseeable manner.

183.    The truck's and mirror system's inadequate warnings were a direct and proximate cause of Decedent Cartwell's injuries because Decedent Cartwell was unaware of the risks that proper warnings would have disclose.

184.    Had adequate warnings been provided, Decedent Cartwell would have avoided

-31-

the harm.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

a. Enter judgment against Defendant PACCAR, Inc. for actual, compensatory, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b. Enter judgment against Defendant PACCAR, Inc. for such attorney's fees and costs as may be or become appropriate; and

c. Grant any other such relief as this Court may determine is just and proper.

## COUNT VIII

### STRICT LIABILITY CLAIM AGAINST DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY – FAILURE TO PROVIDE ADEQUATE INSTRUCTION

185. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

186. Defendant PACCAR Inc., doing business as Kenworth Trucking Company ("Kenworth") designed and sold the 2021 Kenworth Model KB70 truck ("truck") that crushed Decedent Cartwell.

187. Defendant PACCAR Inc. was at all relevant times the manufacturer and/or seller of the truck, responsible for its design, manufacture, labeling, packaging, distribution, and sale to consumers such as DPW.

188. As the manufacturers and/or sellers of the truck, PACCAR, Inc. was responsible for ensuring the truck enter the marketplace with adequate instructions.

189. DPW purchased the truck from PACCAR, Inc..

190. A product, such as the truck, is defective if it lacks proper instructions that explain how to safely use the product and avoid foreseeable hazards.

191. The Mirror System due to the size and/or positioning of the mirror system

required the mirrors to be manually turned inward for the vehicle to proceed down narrow spaces such as the alley at issue.

192.    When the mirrors were turned inward, the driver could not visually monitor the side of the vehicle, creating a foreseeable hazard that other workers or pedestrians could enter the driver's blind zone/spot.

193.    Defendant PACCAR Inc. failed to provide adequate, detailed, and conspicuous instructions explaining:

> a.    The loss of visibility that occurs when the mirrors are turned inward;
>
> b.    The need for alternative safety measures (e.g. spotters, cameras, warning systems) when blind spots/zones are created;
>
> c.    The proper procedure to negotiate narrow pathways safely;
>
> d.    The risk of severe injury or death that may result from operating the vehicle with inward-turned mirrors.

194.    Defendant PACCAR Inc. knew or should have known that commercial trash truck operators routinely encounter alleys, construction sites, yards, and other constrained spaces requiring temporary mirror repositioning.

195.    Defendant PACCAR Inc. had actual or constructive knowledge that turning mirrors inward would substantially limit side visibility and create an unreasonable risk of striking nearby pedestrians and/or workers.

196.    Defendant PACCAR Inc. did not include adequate written, graphical, or physical instructions in the vehicle manual, on product labeling, training materials, or warning plaques.

197.    The instructions provided did not reasonably communicate to drivers that adjusting the mirrors inward removed the operator's ability to visualize the sides of the truck and created a blind zone/spot.

198.   Defendant PACCAR Inc. failed to instruct users to:

    a.   Stop and verify the area was clear before proceeding;

    b.   Use a spotter when visibility was impaired

    c.   Avoid operating the vehicle in areas where people my be present when side-visibility is obstructed.

199.   On November 8, 2024, the date of the incident, the driver was operating the truck in a narrow alley, with the Mirror System adjusted inward as required by the design and positioning of the mirror system.

200.   Due to the absence of adequate instructions regarding the extreme visibility loss, the driver reasonably believed he could safely proceed.

201.   The lack of instructions proximately caused the driver's inability to see the fellow employee located alongside the truck.

202.   As a direct result of the inadequate instructions, the vehicle struck and killed his fellow employee Decedent Cartwell.

203.   Decedent Cartwell suffered fatal injuries as a direct and proximate result of Defendant's PACCAR, Inc. defective and inadequate instructions.

204.   Had Defendant's PACCAR, Inc acted reasonably, and not performed the foregoing acts and omissions, Decedent Cartwell would not have been injured or killed by the truck.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

    a.   Enter judgment against Defendant PACCAR, Inc. for actual, compensatory, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b.   Enter judgment against Defendant PACCAR, Inc. for such attorney's fees and costs as may be or become appropriate; and

    c.   Grant any other such relief as this Court may determine is just and

proper.

## COUNT IX

## WRONGFUL DEATH AGAINST THE MAJOR AND CITY COUNCIL OF BALTIMORE

205.    This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

206.    On or about November 8, 2024, as described more fully in the above paragraphs and in the entire Complaint generally, Decedent Cartwell, was struck, crushed and killed by a DPW truck.

207.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to use reasonable care in controlling the truck and its driver.

208.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to use reasonable care to ensure its driver could fully visualize the sides, specifically the right side, area of its truck.

209.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to use reasonable care to ensure its driver could hear pedestrians and workers on the sides, specifically the right side, area of its truck.

210.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to use reasonable care to ensure that the route of the truck was safe for pedestrians and DPW workers and not too narrow for the work to be done safely.

211.    Defendant Mayor and City Council of Baltimore through its agency DPW had a duty to provide Decedent Cartwell the highest degree of care in providing a safe means, methods and procedures for the picking up of trash.

212.    By failing to use such reasonable care, Defendant Mayor and City Council of

-35-

Baltimore through its agency DPW negligently and/or grossly negligently breached its duties owed to Decedent Cartwell.

213.    Defendant Mayor and City Council of Baltimore through its agency DPW acting directly and by and through its agents, servants, and employees, including the driver, further breached its duties to Decedent Cartwell in the following ways:

a.    Failing to properly train, supervise, and direct its agents, officers, servants and employees, including but not limited to the driver;

b.    Failing to properly hire, train, supervise, and direct its agents, officers, servants, and employees, including but not limited to the Supervisor Anderson, who allowed the driver to leave the scene prior to the accident being investigated and failing to otherwise preserve the scene of the accident;

c.    Failing to properly train, supervise, instruct, and control its employees, agents, officers, and servants, including but not limited to the driver, to ensure the care exhibited towards DPW's employees met the applicable standards of care;

d.    Failing to properly train, supervise, instruct, and control its employees, agents, officers, and servants to establish appropriate and safe policies, standards and procedures for the collection of trash in narrow alleys, including but not limited to using appropriately sized mirrors, cameras and/or alternative routes;

e.    Failing to promulgate policies, practices, procedures and standards consistent with the duty of care DPW and its employees, officers, agents, and servants owed towards Decedent Cartwell;

f.    Failing to purchase trucks with appropriately sized sideview mirrors;

g.    Failing to retrofit its trucks with appropriately sized sideview mirrors;

h.    Failing to prevent and establish policies to prevent its employees, agents, officers, and servants from turning the side mirrors in towards the cab;

i.    Failing to purchase trucks with sideview cameras;

j.    Failing to retrofit its trucks with sideview cameras;

k.   Failing to establish procurement procedures to acquire trucks with appropriately sized mirrors and/or cameras;

l.   Failing to properly balance the cost and benefits of appropriately sized sideview mirrors;

m.   Failing to properly balance the cost and benefits of sideview cameras;

n.   Failing to properly balance the cost and benefits of using alternative routes, practices and procedures as not to take the trucks down narrow alleys and to collect trash on the larger and wider streets where the trucks are designed to operate

214.   As a direct and proximate result of Defendant Mayor and City Council of Baltimore through its agency DPW negligent and/or gross negligent breaches of its duties owed to Decedent Cartwell, and for which Decedent Cartwell would have been able to maintain an action against Defendant Mayor and City Council of Baltimore through its agency DPW had he lived, Decedent Cartwell sustained fatal injuries and was killed.

215.   Decedent Cartwell through Mrs. Carroll is entitled to bring this action as primary beneficiaries per § 3-904(a), or if none exist as secondary beneficiaries who were substantially dependent on Decedent per § 3-904(b).

216.   Defendant Mayor and City Council of Baltimore through its agency DPW conduct constitutes a "wrongful act" within the meaning of § 3-901 and § 3-904.

217.   Defendant Mayor and City Council of Baltimore through its agency DPW actions directly caused Decedent's death, giving rise to compensable damages.

218.   Additionally, the cost to add an appropriately sized sideview mirror system or reposition the current mirror system to every truck in its fleet, and prevent drivers from turning the mirrors inwards towards the cab and driving blind with respect to the sides, is much less than the benefit of even one prevented foreseeable worker collision and death.

219.   The cost to add cameras to every truck in its fleet, and prevent drivers from

turning the mirrors inwards towards the cab and driving blind with respect to the sides, is much less than the benefit of even one prevented foreseeable worker collision and death.

220.    The cost to plan and use alternative routes and not utilize narrow alleys, is much less than the benefit of even one prevented foreseeable worker collision and death.

221.    As a direct and proximate result of Defendant Mayor and City Council of Baltimore through its agency DPW's negligence and gross negligence in causing the death of Decedent Cartwell, Mrs. Carroll sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of attention, loss of advice, loss of counsel, loss of training, and loss of guidance.

222.    Mrs. Carroll is further emotionally injured and outraged by the needless and senseless death of Decedent Cartwell.

223.    Defendant Mayor and City Council of Baltimore through its agency DPW was aware of the negligently and/or grossly negligent defective and unreasonably dangerous condition of its truck fleet yet chose not to take any reasonable steps to ameliorate that condition.

224.    The failure to take such reasonable steps was negligent and/or grossly negligent and in wanton and willful disregard of the safety of Defendant Mayor and City Council of Baltimore through its agency DPW's workers and pedestrians.

225.    This Complaint is timely filed within three years after the death of Decedent Cartwell pursuant to section 3-904(g) of the Courts and Judicial Proceedings Article of the Maryland Code Annotated.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

a.      Enter judgment against Defendant Mayor and City Council of Baltimore through its agency DPW for actual, compensatory, punitive, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

     b.     Enter judgment against Defendant Mayor and City Council of Baltimore through its agency DPW for such attorney's fees and costs as may be or become appropriate; and

     c.     Grant any other such relief as this Court may determine is just and proper.

## COUNT X

### WRONGFUL DEATH AGAINST DEFENDANT DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY

226. This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

227. On or about November 8, 2024, as described more fully in the above paragraphs and in the entire Complaint generally, Decedent Cartwell, was struck, crushed and killed by an DPW truck  manufactured, designed and sold by Defendant PACCAR, Inc.

228. Defendant PACCAR, Inc. designed and manufactured the 2021 Kenworth Model KB70 truck ("truck").

229. The truck was placed into the stream of commerce and sold by Defendant PACCAR, Inc. in a defective and unreasonably dangerous condition, in that the design of the truck did not allow adequate visualization of the side of the truck because of PACCAR, Inc's failure to incorporate either or both smaller sideview mirrors and/or sideview cameras.

230. Such a side view mirror system and/or camera would have had minimal cost per truck if included in the design and manufacture of the truck.

231. The truck was placed into the stream of commerce and sold by Defendant PACCAR, Inc. in a defective and unreasonably dangerous condition, in that the design of the truck's cab did not allow the driver to see or hear anyone on the side of the truck that may have attempted to give the driver any emergency instructions.

232. Such a side redesigned cab would have had minimal cost per truck if included in

-39-

the design and manufacture of the truck.

233.    The truck reached Defendant Mayor and City Council of Baltimore through its agency DPW without any substantial change in its condition and was in that same condition at the time it struck, crushed and killed Decedent Cartwell.

234.    On November 8, 2024, while Defendant Mayor and City Council of Baltimore through its agency DPW was using the truck in a foreseeable manner, Decedent Cartwell was pinned by the truck against a utility pole.

235.    Owing to the lack of appropriately sized sideview mirrors and/or side view cameras and/or the design of the cab, the truck struck and killed Decedent Cartwell.

236.    The utility of including an appropriately size sideview mirror system and/or sideview camera and/or properly design of the cab to allow the driver to hear outweighed the potential savings involved in omitting the appropriately sized sideview mirror and/or cameras and/or cab design.

237.    The utility, if any, in failing to include an appropriately sized sideview mirror and/or repositioning the current mirror system and/or installing a side view camera and/or properly designed cab so that the driver could hear individuals on the side of the truck was outweighed by the risk to the public and Defendant Mayor and City Council of Baltimore through its agency DPW workers of not including the appropriately sized mirror and/or camera and/or properly designed cab.

238.    A reasonable pedestrian or DPW worker, knowing that pedestrians and workers may be on the sides of the truck in a narrow alley, would reasonably have contemplated that the driver of the PACCAR, Inc. truck could visualize the right side of the truck and hear someone on the right side of the truck.

239.    Contrary to those reasonable beliefs, the defective design did not allow the truck driver to visualize and/or hear anyone on the right side of the truck in the narrow alley.

240.    The defective design put the truck in an unreasonably dangerous condition to pedestrians and workers in the alley on the side or around the truck.

241.    As a direct and proximate result of the defective conditions and each of the foregoing tortious acts and omissions of Kenworth, Decedent Cartwell suffered extreme pain and agony lasting from the time the truck crushed him until his death several hours later.

242.    As a result of these defective conditions and each of the foregoing tortious acts and omissions of PACCAR, Inc., Decedent Cartwell suffered pre-impact fright.

243.    Decedent Cartwell through Mrs. Carroll is entitled to bring this action as primary beneficiaries per § 3-904(a), or if none exist as secondary beneficiaries who were substantially dependent on Decedent per § 3-904(b).

244.    Defendant PACCAR, Inc. conduct constitutes a "wrongful act" within the meaning of § 3-901 and § 3-904.

245.    Defendant PACCAR, Inc.'s actions directly caused Decedent's death, giving rise to compensable damages.

246.    As a direct and proximate result of Defendant PACCAR, Inc's defective design, and its role in causing Decedent Cartwell's death, Mrs. Carroll sustained pecuniary loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of attention, loss of advice, loss of counsel, loss of training, and loss of guidance.

247.    Decedent Cartwell acted at all relevant times with reasonable care for his own safety.

248.    Mrs. Carroll is further emotionally injured by the needless and senseless death of Decedent Cartwell.

249.    Defendant PACCAR know of the dangerous conditions yet willfully and wantonly continued to introduce unreasonably dangerous trucks into the stream of commerce without warning or mitigation.

250.    This Complaint is timely filed within three years after the death of Decedent Cartwell pursuant to section 3-904(g) of the Courts and Judicial Proceedings Article of the Maryland Code Annotated.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

    a.    Enter judgment against Defendant Kenworth Trucking Company, a Division of PACCAR, Inc. for actual, compensatory, and other damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

    b.    Enter judgment against Defendant Kenworth Trucking Company, a Division of PACCAR, Inc. for such attorney's fees and costs as may be or become appropriate; and

    c.    Grant any other such relief as this Court may determine is just and proper.

## COUNT XI

### SURVIVAL ACTION CLAIM AGAINST THE THE MAYOR AND CITY COUNCIL OF BALTIMORE BY THE ESTATE OF TIMOTHY CARTWELL

251.    This Count incorporates by reference the foregoing and following paragraphs and averments of this Complaint as if set forth fully herein.

252.    Mr. Carroll brings this survival claim as the administrator of Decedent Cartwell's estate and against the Defendant Mayor and City Council of Baltimore through its agency DPW.

253.    Plaintiff's claims under common law negligence, gross negligence and infliction of emotional distress on behalf of Decedent Cartwell are actionable under Maryland Courts and

Judicial Proceedings Code § 6-401.

254.    Decedent Cartwell suffered extreme emotional distress and dies as a direct result

of the wrongful, negligent and grossly negligent acts committed by Defendant Mayor and City

Council of Baltimore through its agency DPW.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

a.    Enter judgment against the Defendant Mayor and City Counsil of Baltimore for conscious pain & suffering before death, and other appropriate damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b.    Enter judgment against Defendant Defendant Mayor and City Council of Baltimore for such attorney's fees and costs as may be or become appropriate; and

c.    Grant any other such relief as this Court may determine is just and proper.

## COUNT XII

### SURVIVAL ACTION CLAIM AGAINST DEFENDANT PACCAR, INC. DOING BUSINESS AS KENWORTH TRUCKING COMPANY BY THE ESTATE OF TIMOTHY CARTWELL

255.    This Count incorporates by reference the foregoing and following paragraphs and

averments of this Complaint as if set forth fully herein.

256.    Mr. Carroll brings this survival claim as the administrator of Decedent Cartwell's

estate and against PACCAR, INC.

257.    Plaintiff's claims under common law negligence, gross negligence and infliction

of emotional distress on behalf of Decedent Cartwell are actionable under Maryland Courts and

Judicial Proceedings Code § 6-401.

258.    Decedent Cartwell suffered extreme emotional distress and dies as a direct result

of the wrongful, negligent and grossly negligent acts committed by Defendant DPW.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to:

a.    Enter judgment against the PACCAR, Inc. doing business as Kenworth Trucking Company for conscious pain & suffering before death, and other appropriate damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

b.    Enter judgment against Defendant PACCAR, Inc. doing business as Kenworth Trucking Company for such attorney's fees and costs as may be or become appropriate; and

c.    Grant any other such relief as this Court may determine is just and proper.

By:    _Wesley R. Payne /S_

_____

Wesley R. Payne (#9412120009)
White and Williams, LLP
1640 Market Street
One Liberty Place
Suite 1800
Philadelphia, PA 19103
Telephone (215) 864-7076
Facsimile: (215) 789-7573
Email: paynew@whiteandwilliams.com

03/26/2026

-44-