**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **MARY CARROLL, et al.** | * |
| | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| **v.** | * |
| | *   **CIVIL NO.: 1:26-cv-01965-RDB** |
| **MAYOR AND CITY COUNCIL** | * |
| **OF BALTIMORE, et al.** | * |
| | * |
| **Defendants** | * |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MAYOR AND CITY COUNCIL OF BALTIMORE'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Defendant Mayor and City Council of Baltimore submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint.  For the reasons set forth below, the City asks that Plaintiffs' Amended Complaint be dismissed with prejudice for failure to state a claim.

Dated: May 19, 2026

Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

<u>/s/ *Hanna Marie C. Sheehan*      </u>
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax:    410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City*
*Council of Baltimore*

1

**Table of Contents**

**INTRODUCTION** ........................................................................................................3

**STANDARD OF REVIEW** ..........................................................................................4

**ARGUMENT** .............................................................................................................5

    I.     **Plaintiffs' Constitutional Claims Fails as a Matter of Law** ......................................5

        a. **The Amended Complaint Fails to State a Claim upon which Relief can be granted with respect to the Equal Protection Clause.** ..............................................................5

        b. **Plaintiffs' Amended Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone** ..................................................................................................7

    II.    **Plaintiffs' NHTSA and FMCSA Claims Must be Dismissed.** ..................................8

    III.    **Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law as they are Covered by the Maryland Workers' Compensation Act.** ................................................9

    **CONCLUSION** ......................................................................................................13

**INTRODUCTION**

This matter involves a work-place accident that occurred in Baltimore City. On November 8, 2024, Timothy Cartwell, a Baltimore City Department of Public Works ("DPW") Employee was injured during the course of his employment and succumbed to his injuries the same day. Plaintiffs in this matter sue as the representatives of the deceased individual. Plaintiffs bring a Fourteenth Amendment Equal Protection claim (Count I), negligence and gross negligence claims (Counts II, III, and IV), a wrongful death claim (Count IX), and a survivor action claim (Count XI). None of these Counts state a claim upon which relief can be granted and therefore Plaintiffs' Amended Complaint should be dismissed.

Plaintiffs' Amended Complaint seeks to convert an unfortunate and tragic accident into a constitutional case by asserting claims against the City under the Fourteenth Amendment's Equal Protection clause. However, Plaintiffs have failed to allege facts that would indicate that the City engaged in any discriminatory practices with respect to a protected class. Plaintiffs also bring claims of negligence and gross negligence pursuant to federal regulations as well as general state law claims of gross negligence, survival action, and wrongful death. Plaintiffs have no private cause of action under National Highway Safety Administration Standard (NHTSA) regulations or the Motor Carrier Act ("MCA") and associated regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA"). Further, it is undisputed that Mr. Cartwell was working when the incident occurred. As such, Plaintiffs' state law claims are also improper as their right to relief lies with the Maryland Workers Compensation Act, ("WCA"), which "provides the exclusive remedy to an employee for an injury or death arising out of and in the course of employment." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 99 (D.

Md. 2011).   Plaintiffs have also failed to bypass the exclusivity of the WCA as they have failed to allege that the City's behavior was intentional or deliberate.

For these reasons and those discussed *infra*, the City respectfully requests that Plaintiffs' Amended Complaint be dismissed with prejudice and without leave to amend.

## STANDARD OF REVIEW

A complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not "state a claim upon which relief can be granted."  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Moreover, the court is not obligated to accept a plaintiff's conclusory allegations regarding the legal effect of the facts alleged.  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994).  Rather, a plaintiff has an obligation to provide grounds for his entitlement to relief and that obligation requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Qwest Communications Corp. v. Maryland-National Capital Park & Planning Comm'n*, 553 F. Supp. 2d 572, 574 (D. Md. 2008) (*quoting Twombly*, 550 U.S. at 555). "Nor does a Complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted).

Thus, in order "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (*emphasis added*) (*quoting Twombly*, 550 U.S. at 570). The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. Rather, it requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has

stated a claim entitling him to relief, *i.e.*, the "plausibility of 'entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557) (emphasis added).

## ARGUMENT

### I.    Plaintiffs' Constitutional Claims Fails as a Matter of Law

#### a.   The Amended Complaint Fails to State a Claim upon which Relief can be granted with respect to the Equal Protection Clause.[1]

The Equal Protection Clause states that "[n]o state shall…deny any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV §1. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "[T]o successfully plead an equal protection claim, a plaintiff must allege that he was treated differently from another similarly situated individual, and 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

---

[1] Plaintiffs have solely made an Equal Protection claim under the Fourteenth Amendment. However, some of the language utilized in making that claim is the same language utilized for Due Process claims, specifically under the state created danger doctrine. The state-created danger doctrine is a limited exception to the general rule that "a defendant's mere failure to act does not give rise to liability for a due process violation." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) *cert. denied*, 140 S. Ct. 905, 205 L. Ed. 2d 461 (2020). This doctrine is so limited that the U.S. Court of Appeals for the Fourth Circuit (the "Fourth Circuit") recently noted that it has not upheld a state-created danger claim in over 20 years. *Id*. at 646.

In the government employment context, the state-created danger doctrine requires "affirmative acts, not merely . . . inaction or omissions." *Doe F v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). Such claims are so consistently rejected because they must be supported by allegations that the government *intentionally* and *deliberately* injured its employee. *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012). Indeed, these claims have been rejected multiple times in this Circuit in circumstances where individuals tragically die in the course of their duty. *Id*; *see also Waybright v. Frederick Cty., MD,* 528 F.3d 199 (4th Cir. 2008). Like in those cases, Plaintiffs' Amended Complaint here at best alleges only a series of acts or omissions that led to a workplace accident. The Amended Complaint does not – and cannot – plausibly allege that the City *intended* the deaths of one of its valued employees.

constitutional rights, or malicious or bad faith intent to injure a person.'" *Baker v. McCall*, 842 F. Supp. 2d 938, 950 (W.D. Va. 2012) (*quoting Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir.1999)). When an action by the government is "otherwise neutral on its face, [it] must not be applied so as invidiously to discriminate on the basis of race." *Washington v. Davis*, 426 U.S. 229, 241 (1976). Such actions must constitute an "unequal application of the law…as to show intentional discrimination." *Id*. (internal citations omitted).

Equal protection claims apply to individuals in protected classes, which include race. Here, Plaintiffs make a single reference to race in their Amended Complaint, stating that "a significant number" of DPW sanitation employees are "African-American." Am. Compl. ¶69. From this single statement paired with the other facts alleged, it appears that Plaintiffs are basing their equal protection claim on a theory that the City implemented policies and procedures that were specifically intended to harm African-American employees. This is, in short, absurd and is not supported by the facts alleged in the Amended Complaint.  Nowhere beyond the single mention stated above do Plaintiffs provide any information as to what actions the City took or did not take to discriminate against African-American employees. Plaintiffs also fail to indicate how Mr. Cartwell was "treated differently from another similarly situated individual and that such treatment was based on impermissible considerations." *Baker*, 842 F. Supp. 2d at 950.  Nor is there any indication that the City's maintenance and training policies were anything but "neutral on their face." *Washington,* 426 U.S. at 241.  In fact, based on Plaintiffs' claims that the City had adopted and maintained a widespread policy with respect to the operation and maintenance of DPW trucks, Mr. Cartwell received the same treatment as any other City sanitation employee; e.g. he was exposed to these policies and practices solely as a result of his employment and not due to his race. Without further specificity, Plaintiffs' claims of an equal protection violation fail, as to survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, Plaintiffs have utterly failed to provide any facts supporting their equal protection claim that the City engaged in a pattern or practice of discrimination based on race such that Mr. Cartwell's equal protection rights were affected. Therefore, Count I of their Amended Complaint must be dismissed.

### b. Plaintiffs' Amended Complaint Must be Dismissed Because a *Monell* Claim Cannot Stand Alone

A *Monell* claim must be supported by an allegation of a constitutional violation by a government employee. It is "axiomatic that a *Monell* claim cannot lie where there is no underlying constitutional violation by the employee." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 459 (D. Md. 2020) (citations and quotations omitted). "No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee." *Anderson v. Caldwell Cty. Sheriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013). "Municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages." *Waybright v. Frederick Cnty., MD*, 528 F.3d 199, 203–04 (4th Cir. 2008) *citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571; *see also Grayson v. Peed,* 195 F.3d 692, 696 (4th Cir.1999).

Here, no constitutional claim has been alleged against any City employees. The only Defendant named in Plaintiffs' Complaint is the Mayor and City Council of Baltimore. No individual employee of the City is named as a defendant, and there are no allegations of an

underlying constitutional violation committed by any City employee.  As such, Count I of Plaintiffs' Amended Complaint fails to state a claim and must be dismissed.

## II.        Plaintiffs' NHTSA and FMCSA Claims Must be Dismissed.

Counts II and III of the Amended Complaint claim alleged violations of National Highway Transportation Safety Administration Standard ("NHTSA") regulations and Federal Motor Carrier Safety Administration ("FMCSA") regulations.  Plaintiffs' NHTSA claims must be dismissed as the National Traffic and Motor Vehicle Safety Act ("NTMVSA"), which established the NHTSA, does not create a private right of action. *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 523 (11th Cir. 2000)("nothing in the language of the [NTMVSA] or its legislative history supports an inference that Congress intended to create a private cause of action" with respect to regulations created by the Act); *see also Handy v. Gen. Motors Corp.*, 518 F.2d 786, 788 (1975)(stating that "Congress did not intend to create private rights of action in favor" of individuals when it "adopted the comprehensive system of regulation to be administered by the NHTSA."). Similarly, Plaintiffs' FMCSA claims must be dismissed because there is no private right of action for alleged personal injuries available under the Motor Carrier Act ("MCA"), or the associated regulations promulgated by the FMCSA. The MCA and the FMCSA regulations are "intended to apply to commercial damages, not personal injuries." *Schramm v. Foster*, 341 F. Supp. 2d 536, 547 (D. Md. 2004).  As such, federal courts confronting the question have uniformly determined that the MCA "does not create a private right of action for personal injuries." *Id; see also Leon v. FedEx Ground Package Sys., Inc.*, No. CV 13-1005 JB/SCY, 2016 WL 836980, at *11 (D.N.M. Feb. 16, 2016)("The Court concludes that there is no federal private right of action allowing personal injury or wrongful death plaintiffs to hold defendants liable for violations of the FMCSR."); *Stewart v. Mitchell Transp.*, 241 F. Supp. 2d 1216, 1221 (D. Kan. 2002)("The legislative history gives no indication that

8

Congress intended to expand the scope of the Motor Carrier Act to cover personal injury claims where there was no such coverage before.').

Moreover, in Maryland, violation of a statute can only be used as evidence to support an independent claim, such as gross negligence. A violation of a statute, even if proven, is not negligence per se. The "settled rule in Maryland is that a statutory violation is evidence of negligence. It does not constitute negligence per se, unless a statute makes it so." *Absolon v. Dollahite*, 376 Md. 547, 557, 831 A.2d 6, 11 (2003). The Safety Act and MCA regulations do not make a violation negligence per se. Plaintiffs' counts for violations of the NHTSA and FMSCA regulations are therefore not independently actionable and must be dismissed.

### III. Plaintiffs' State Law Claims Should be Dismissed as a Matter of Law as they are Covered by the Maryland Workers' Compensation Act.

The WCA provides compensation to employees injured in workplace accidents or, in the case of death, to the dependents of the covered employee. Md. Code Ann., Lab. & Empl. § 9-501. Recipients need not prove fault to collect under the WCA: the act provides a "no-fault compensation system for employees and their families for work-related injuries." *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 76 (1996). The WCA not only serves to compensate workers and their dependents, but also "protect[s] employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of caring for the helpless human wreckage found [along] the trail of modern industry." *Id.* (quotation omitted).

In exchange for this "certain, efficient, and dignified form of compensation," an employee "abandon[s] common law remedies, thereby relieving employers from the vagaries of tort liability." *Id.*; *see also* Md. Code Ann., Lab. & Empl. § 9-509(b) ("the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person"). The "[c]ompensation awarded on this fault-free basis under

the statutory plan substitutes for an employee's common law right to bring a fault-based tort against an employer for damages resulting from the employee's injury." *Mayor & City Council of Baltimore City v. Johnson*, 156 Md. App. 569, 587 (2004), *aff'd,* 387 Md. 1, 874 A.2d 439 (2005); *see also Bd. of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 36–37 (2012). As such, "compensation pursuant to the Act is ordinarily an injured employee's exclusive remedy with respect to the employer." *Johnson*, 156 Md. App. at 587.

The only limited exception to this rule of exclusivity is when an employee is "injured or killed as a result of the deliberate intent of the employer to injure or kill the covered employee." Md. Code Ann., Lab. & Empl. § 9-509(b). Maryland jurisprudence makes clear that to "bypass the exclusivity provided by a workmen's compensation statute . . . the complaint must be based upon allegations of an intentional or deliberate act by the employer *with a desire to bring about the consequences of the act.*" *Johnson v. Mountaire Farms of Delmarva, Inc.*, 305 Md. 246, 255 (1986) (emphasis added). A complaint that alleges intentional acts leading to an accidental injury or death is insufficient, because "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *Id.* This exception therefore applies only in the unusual circumstance where an employer deliberately and intentionally harms their employee.

Important here, allegations of an employer's willful or knowing behavior, gross negligence, or violation of a safety statute do not fall under the "deliberate intent" exception. As described by the Court of Appeals of Maryland:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, *wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this*

10

> *still falls short of the kind of actual intention to injure that robs the injury of accidental character.*

*Id.* at 254 (emphasis in original) (quoting Larson, *The Law of Workmen's Compensation* § 65.11 (1983)). This principal was reiterated more recently by the Fourth Circuit in *Gantt v. Sec., USA*, where the court noted that "[p]roof of an employer's willful, wanton, or reckless conduct even when that conduct is undertaken with a knowledge and appreciation of a high risk to another does not suffice to bring employer's conduct within intentional tort exception to Maryland Workers' Compensation Act's normal exclusivity rule." 356 F.3d 547, 555 (4th Cir. 2004) (citations and quotations omitted).

It is undisputed that the accident in this case took place in the course of Plaintiff's employment with the City and therefore falls under the WCA. It is also clear that the accident does not fall under the WCA's "deliberate intent" exception. Even if taken as true, the claims in Plaintiffs' Amended Complaint describe only negligent actions by the City. Plaintiffs' central claims are that the City failed to supervise and train its employees, follow policies and procedures in place with respect to the operation of specific motor vehicles owned by the City, that the City failed to procure equipment that could have prevented the accident, and that the City failed to adhere to federal regulations. *See* Am. Compl. *passim*.

More specifically, Plaintiffs' claims are based on allegations that the City engaged in a practice of "allowing [DPW] drivers to turn the side view mirror system on the trucks towards the cab while in narrow alleys" which "prevent[ed] the driver from seeing the sides of the vehicle contrary to federal regulations." Am. Compl. at ¶27. They also state that the "practice of turning the mirrors system towards the cab of the truck prevented the use of the sideview mirror system and prevented its purpose of allowing the driver to see the sides of the truck and reduce the

11

potential for accidents." Am. Compl. at ¶28. According to Plaintiffs, this practice resulted in the driver operating the vehicle involved in Mr. Cartwell's accident blindly in the alleyway "without being able to fully visualize the sides of the truck." Am. Compl. at ¶59. Plaintiffs state that such actions, "when [the City] knew by doing so that the truck could cause a danger to its workers or pedestrians" rose to the level of "gross negligence." Am. Compl. at ¶59. Plaintiffs also claim that the City's failure to follow federal regulations constituted negligent behavior. These claims all rely on "draft operating procedures" maintained by DPW as well as federal regulations regarding the operation of motor vehicles such as the one involved in this incident. Am. Compl. at ¶¶27, 58. Plaintiffs assert that the City's failure to adhere to these draft procedures and to federal regulations constitute negligent and grossly negligent behavior.

None of these allegations are sufficient to bypass the exclusivity provision in the WCA. Nowhere does Plaintiffs' Amended Complaint allege that the City Defendants deliberately intended to cause the death of Timothy Cartwell. While the Amended Complaint details that his death was due to allegedly intentional decisions and policy choices of the City Defendants, it does not claim that the City Defendants intended the alleged consequences of those decisions. Indeed, Plaintiffs cannot make this claim as the Amended Complaint asserts that Mr. Cartwell's death was caused by the combined effects of a lack of training and supervision, lack of procuring appropriate equipment, and lack of enforcement of policies regarding operation of equipment. *See* Am. Compl. *passim*. The Amended Complaint also clearly details the accident and nowhere suggests that the City intentionally undertook the deliberate criminal act of intentionally causing Mr. Cartwell's death.

While the Amended Complaint generally implies that Mr. Cartwell's death was due to the intentional decisions of the City, it does not claim that the City intended the alleged consequence

of those decisions, as is required under Maryland law. Am. Complaint, *passim*; *see also Johnson*, 305 Md. at 255.   Indeed, Plaintiffs cannot make this claim, as the Amended Complaint asserts negligence, gross negligence, wrongful death, and survival actions, supported by the allegations that the deaths and injuries were caused by what essentially amounts to a failure to use reasonable care with respect to the Plaintiff. Even with their assertions of recklessness and gross negligence, the Plaintiffs cannot bypass WCA exclusivity. No intentional torts are claimed.  The Amended Complaint clearly details an accident that occurred during the Plaintiff's employment with the City.  Nowhere does it suggest that the City Defendants undertook the criminal act of intentionally causing the death of Timothy Cartwell.

Where a plaintiff cannot present any evidence that an employer deliberately intended to injure or kill an employee, judgment must be granted in favor of the employer.  *Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 529 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003) (granting judgment in favor of employer where "[t]here is no evidence that Giant deliberately intended to injure or kill Newman").  While plaintiffs may be entitled to relief through a properly submitted workers' compensation claim under the WCA, they cannot receive any relief via an action in this Court.  As such, the City asks that Counts II-IV, IX, and XI be dismissed as to the City, with prejudice and without leave to amend.

## CONCLUSION

For the reasons stated herein, the City respectfully requests that this Honorable Court dismiss Plaintiffs' Complaint against the City in its entirety, with prejudice and without leave to amend.

Dated: May 19, 2026

Respectfully submitted,

EBONY M. THOMPSON
City Solicitor

/s/ *Hanna Marie C. Sheehan*
HANNA MARIE C. SHEEHAN (#19531)
Chief Solicitor
Baltimore City Law Department
100 Holliday Street, Suite 101
Baltimore, Maryland 21202
Phone: 410-396-4431
Fax:    410-547-1025
Hanna.Sheehan@baltimorecity.gov
*Counsel for Defendant Mayor and City*
*Council of Baltimore*

14